UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____ )
D.I., by and through her parents,   )          Civil Action
Kenneth and Makeesa Irvin,          )
                                    )
and                                 )
                                    )   Hon. Madeline Cox Arleo, U.S.D.J
                                    )   Case No.: 2:22-CV-01248-MCA-AME
K.M., by and through her parent,    )
Danielle Moore,                     )
                                    )
                        Plaintiffs, )
vs.                                 )       **SECOND AMENDED COMPLAINT**
                                    )
                                    )
Middlesex Borough Bd. of Educ.,     )
                                    )
                        Defendant.  )
_____ )

## INTRODUCTION

This is a civil rights case brought by two (2) ninth grade, African- American female students against the Middlesex Borough Board of Education ("Defendant" or "School District"). Racism has permeated the School District for years. African-American students have been called "nigger," "monkey," "blackie," physically threatened and assaulted, and targeted because of the color of their skin, physical characteristics, type of hair, and negative racial stereotypes about African-American families. And throughout all of this, the Defendant has consistently turned a blind eye and intentionally deliberately failed to meaningfully address the racial harassment at its schools. As a result, African-American students enrolled in Defendant's schools have suffered emotional trauma and substantial disruption to their education.

Plaintiff's D.I. and K.M. have attended middle and high school in the Middlesex Borough School District. They have experienced numerous incidents of racial harassment by school,

1

as well as, school and classmates during their years attending
Von E. Mauger Middle School and Middlesex High School. Among
other incidents, D.I. and K.M. have also overheard racial slurs
in the classrooms and hallways directed toward other African-
American student at both schools. During the 2020-2021 and 2021-
2022 school years Plaintiff D.I. experienced a number of
specific instances when she was subject to racial epithets and
harassment by various Caucasian schoolmates, including S.P.,
B.S., D.P.-F, and "her friends." Am. Compl., ECF 4, at ¶¶ 100,
107, 118, 119, 157, and 170. One of these students, S.P., posted
a message during the Summer of 2021 calling another student
*Nigger."* Id. at ¶104. S.P. did similarly on or about January
10, 2022, when she posted a photo on her social media platform
referring to African-American schoolmates as *"Nigggeeeeerrrrr."*
Id. at ¶51. Another Middlesex High School student, R.G., posted
on the site of her family's business, a photo referring to an
African-American schoolmate as *"blake the monkey."* Id. at ¶49.

Similar racially motivated incidents happened frequently
between Caucasian students and K.M., at times in front of
teachers and other staff, and some would not respond or
intervene on K.M.'s behalf in any way. During her years as a
student at Von E. Mauger Middle School and Middlesex High
School, from September 2019 to the present, K.M. has been called
"nigger", "monkey", told that her skin was "dirty", and even
harassed about her hairstyle, natural hair and length, and
single-parent household. K.M. told teachers or other staff when
she experienced harassment initially, especially at Middlesex
High School, but when the staff members did not respond, she
became discouraged and doubted that they would ever intervene.
The harassment was so pervasive and happened so often in front
of adults, K.M. concluded that school administrators, teaching
staff, and other employees condoned the behavior and believed

2

reporting it further would be futile. Even worse is that K.M. and her classmate and friend, A. B., feared that if they told school administrators about the racial harassment that the administrators would be deliberately indifferent, their harassers would retaliate, and the harassment would get worse. Several African-American students, including both K.M. and A.B., dislike attending Middlesex High School and at times missed school because of the racial harassment.

The Middlesex Borough Board of Education was fully aware that its educational environment was racially hostile, but in spite of this knowledge, it took no meaningful action to address it. In fact, in spite of the persistent racial harassment Plaintiff D.I. experienced at the School District, the only students substantially punished for anything was D.I. and her African-American friend, S.S. In fact, even though the School District investigated and found that M.W. racially harassed Plaintiff K.M., and even though it was after the instant original Complaint was filed, the School District still did not discipline M.W. for his conduct.

It does not take an educational psychologist to find that being referred to by one's peer by the most noxious racial epithet in the contemporary American lexicon, being shamed, humiliated and emotionally traumatized on the basis of one's race, and having school district authorities consistently ignore or reject one's complaint would adversely affect an African-American child's ability to obtain the same benefits from schooling as her white schoolmates.

This is particularly the case in light of the victims' age. Ninth grade is a sensitive time in a child's life.  It is the beginning of high school, when a young adolescent is highly impressionable and is making decisions about education that will affect the course of her life.  It is when college plans are either

3

initiated or abandoned.  Clearly, racial harassment of a young child by schoolmates that is tolerated or condoned in any way by adult authority figures is likely to have a far greater impact than similar behavior would on an adult.  A high school where this manner of conduct occurs unremediated, especially after actual notice occurred, when a student and her parents made complaints about racially demeaning incidents to the appropriate educational authorities, the high school is utterly failing in its mandate to provide a nondiscriminatory educational environment.

Now, Plaintiffs, D.I. and K.M., currently ninth grade, African-American female students enrolled in Defendant's Middlesex High School, by and through their parents and attorney, bring this action against the Middlesex Borough School District for violations of their rights under Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, the New Jersey Law Against Discrimination, N.J. Stat. Ann § 10.5-1 *et seq.*, and their right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

## JURISDICTION

1.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

2.   This action arises under the Fourteenth Amendment of the United States Constitution; 42 U.S.C. § 1983; Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d; and the New Jersey Law Against Discrimination, N.J. Stat. Ann § 10.5-1 *et seq.*

3.   This Court has jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States.

4.    This Court also has supplemental jurisdiction with respect to claims arising under state law pursuant to 28 U.S.C. § 1367.

5.    This Court has personal jurisdiction over Defendant because Defendant Middlesex Borough Board of Education is a public agency of the State of New Jersey with its headquarters and activities located in Middlesex County, New Jersey.

## VENUE

6.    Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b), and in its Newark Vicinage, because the events giving rise to the claims herein have been committed in the Middlesex Borough Board of Education, the student records relevant to those practices are maintained and administered at the offices of the Middlesex Borough Board of Education, and Defendant resides in Middlesex County, New Jersey.

## PARTIES

7.    Plaintiffs re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

8.    D.I., a minor African-American female, by and through her parents, Kenneth and Makeesa Irvin, attended Von E. Mauger Middle School, in the School District, from approximately September 2016 until June 2019, and is currently enrolled in ninth grade at Middlesex High School.

9.    Kenneth Irvin, father of D.I., is an adult resident citizen of Middlesex County residing at 37 Treetop Road, Middlesex, New Jersey.  He has had four children enroll in and graduate from schools in the School District during the previous thirteen (13) years.

10.  Makeesa Irvin, mother of D.I., is an adult resident citizen of Middlesex County residing at 37 Treetop Road, Middlesex, New Jersey.

11.  K.M., a minor African-American female, by and through her mother, Danielle Moore, attended Von E. Mauger Middle School, in the School District, from approximately September 2015 until June 2018, and is currently enrolled in ninth grade at Middlesex High School.

12.  Danielle Moore, mother of K.M., is an adult resident citizen of Middlesex County residing at 329 Melrose Avenue, Middlesex, New Jersey.

13.  Defendant Middlesex Borough Board of Education is a comprehensive community public school district governed by a nine-person board of education, organized and existing pursuant to New Jersey law.  The District at all relevant times acted under color of law.

14.  Defendant Middlesex Borough Board of Education is comprised of six (6) schools: one (1) prekindergarten; three (3) elementary schools; two (2) middle/intermediate schools; and, one (1) high school.

15.  Defendant Middlesex Borough Board of Education is a public agency of the State of New Jersey, located in Middlesex County, with registered offices at 300 John F. Kennedy Drive, Middlesex, NJ 08846.

16.  The School District is serving 2,079 students during the current 2021-2022 school year.

17.  Programs and activities that receive Federal financial assistance from the United States Department of Education are covered by Title VI.

18.  The School District receives federal funds from the United States Department of Education each year to support the operation of the Title I programs in its schools.

19.  Title I is a K-12 program that provides additional academic support and learning opportunities for students at schools with high percentages of socioeconomically disadvantaged children.  The program is intended to help ensure that all students meet state academic standards.

20.  Three (3) of the School District's six (6) schools are designated as Title I schools.

21.  Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin. See, 42 U.S.C. § 2000d. Public educational institutions that receive federal funds are subject to this mandate. 34 C.F.R. § 100.13(i) (2000) (defining "recipient" to include any public "agency, institution, or organization, or other entity in any State, to whom Federal financial assistance is extended"); see also, id. § 100.13(g)(2)(ii).

22.  According to the New Jersey School Performance Report's most recent data collection (2020), African-American students comprise 6.7% of the student population in the School District.  Also, 27.6% of the students are economically disadvantaged.

23.   There are no African-American classroom teachers in the School District.   The Middlesex Education Association represents approximately 270 staff members.

24.   The School District did not employ an African-American administer, district-wide, until July 1, 2019.

25.   The School District never had an African-American attorney attend a monthly board meeting or furnish legal service on its behalf until February 8, 2021.   Although appearing virtually, Ms. Hope R. Blackburn, Partner with The Busch Law Group LLC, functioned as that attorney.

26.   The following individuals, though not parties, are currently employed for Defendant Middlesex Borough Board of Education, during the relevant time period:

a)   Dr. Frederick D. Williams is the Superintendent of Schools and has held this position since July 1, 2019, during the relevant time period.   Dr. Williams is African-American.   His three-year employment contract expires on June 30, 2022.

b)   Ms. Dana Chibbaro is the Principal of Middlesex High School and has held this position since July 1, 2020, during the relevant time period.

c)   Mr. Peter Bovee is the Assistant Principal of Middlesex High School and has held this position since August 23, 2021, during the relevant time period.

d)   Ms. Stacy Ulmer is the School District's Anti-Bullying Coordinator as of the June 13, 2013 by Approval of Annual

Organizational Motions and Appointments, during the relevant time period.  She also served as a Student Assistance Counselor.

e)   Mr. James Schmitt is the Anti-Bullying Specialist of Middlesex High School and has held this position since February 1, 2016, during the relevant time period.

f)   Mrs. Gina Shehu is the School Counselor 9-12 of Middlesex High School and has held this position since prior to the 2009-2010 school year, during the relevant time period.

g)   Mrs. Joyce Kaack is the Language and Literacy Development Teacher of Middlesex High School and has held this position since prior to the 2005-2006 school year, during the relevant time period.

27.  New staff hired after September 2020, and staff members hired prior to September 2020, are required to complete mandatory district-wide training in Harassment, Intimidation, and Bullying pursuant to N.J.S.A. 18A:37-17b and c and N.J.A.C. 6A:16-7.7; Board Policy- 5512, Harassment, Intimidation, and Bullying; and review GNC Videos on Cyber Bullying, NJ Anti-Bullying Bill of Rights, Peer Counseling, Anti-Violence & Conflict Resolution, and, Student-to-Student Hazing & Harassment.  Exhibit A.

28.  These multiple online training resources are designed to ensure that every staff member has the necessary information to establish and maintain a positive, safe, healthy and lawful climate and culture in the School District.  They range from 18 to 34 minutes long and all can be completed within one-half day.

29.  Ultimately they are meant to train old and new staff members on how to provide a welcoming educational environment for students across the School District so that they may be able to thrive and do their best work.

30. Since there is no mandatory deadline or progressive disciplinary action leading to termination for failure to do so, staff members routinely fail to complete this mandatory district-wide training.

31.  For example, during the December 13, 2021, Board of Education Regular Meeting, under "Reporting of Report Period 2" Harassment, Intimidation, Bullying (HIB)," "Mrs. Dudley, Watchung Elementary School, reported no cases of HIB for the 2020-2021 school year; . . . Mr. Gianchiglia, Principal, Hazelwood School, reported no cases of HIB for the 2020-2021 school year; . . . Mr. Sirna, Parker Elementary School, reported no cases of HIB for the 2020-2021 school year; . . . Mr. Regan, Principal, Von E. Mauger Intermediate School, reported that there was one HIB case confirmed; . . . Dr. Christofferson, Principal, Von E. Mauger Middle School, reported that there was one HIB case unfounded; and, Mr. Bovee, Assistant Principal, Middlesex High School, reported that there was one HIB case unfounded."

32.  However, the School District's Student Safety Data System's (SSDS) Report for Report Period 2 for the 2020/2021 school year, must include not only incident data collected from September 1, 2020 through June 30, 2021, but also, Harassment, Intimidation, and Bullying trainings and programs completed from July 1, 2020 through June 30, 2021.

33.   A review of the Monthly Agenda Items and Meeting Minutes of Middlesex Public Schools, from 2010-2011 to 2021-2022, reveals that the School District routinely fails to submit to the Middlesex Borough Board of Education data collected on its staff members' Harassment, Intimidation, and Bullying trainings and programs completed annually.

34.   Again, since there is no mandatory deadline or progressive disciplinary action leading to termination for failure to complete the "mandatory" district-wide Harassment, Intimidation, and Bullying trainings and programs, staff members have routinely failed to do so.

35.   Despite repeated requests and ample notice of racial harassment and discrimination, as well as systemic racism in the School District, Defendant has to date still not taken meaningful action to protect Plaintiff D.I., its students, and remediate this rampant conduct in its schools.

36.   The School District has failed to implement effective remedial measures to reinforce the basic principle that student-on-student harassment and discrimination is unacceptable.

37.   The Middlesex High School Student Handbook, 2021-2022, includes a section on Harassment, Intimidation, and Bullying. However, there is no student training on the subject matter. Exhibit B.

38.   Further, there is no reinforcement of this HIB Policy through student assemblies, continued integration of related topics into the classroom, continued information made available to parents and guardians on related topics, or any other form of communication.

11

39.  The Middlesex Borough Public School District's Code of Conduct, 2021-2022 School Year, for Middlesex High School, does not include an "Offensive Conduct/Disciplinary Measures" section concerning student-on-student harassment and/or discrimination. Exhibit C.

40.  The Middlesex Borough Board of Education's deliberate indifference to student-on-student racial harassment and discrimination has resulted in widespread emotional and educational injury to Plaintiffs D.I. and K.M. and to other African-American students throughout the School District.

41.  The racial harassment and discrimination is depriving Plaintiff D.I. of the educational benefits and educational opportunities available at Middlesex High School.

42.  Furthermore, any alleged current efforts by Defendant to address racial harassment and discrimination in the Middlesex Borough Board of Education does not eradicate its repeated failure throughout multiple school years to investigate complaints of racial harassment and discrimination and adequately train its staff regarding properly handling racial harassment and discrimination in the schools, despite repeated pleas from students, parents, and community members.

## FACTUAL BACKGROUND

I.  **Systemic Race Discrimination Plagues the School District, and Defendant has Ignored the Problem And Failed to Take Adequate Steps to Address It.**

43.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

42.  Racism has permeated the Middlesex Borough Board of Education for years.

44.  For example, while attending a football game between Highland Park High School and Middlesex High School during the 2006-2007 season, Dr. Frederick D. Williams, endured the humiliation of hearing Middlesex High School students call his son *"nigger"* and other racial slurs while playing on the football field for Highland Park High School.

45.  Further, during the "Communication From The Public" portion of the October 7, 2013, Board of Education Regular Meeting, held at the Middlesex High School library, Ms. Tamika Mbaekwe, commented on the *"lack of selection of books by African-American authors in the Mauger School Library."*

46.  This parental concern still exists in the School District as of the 2021-2022 School Year.  During the "Communication From The Public" portion of the September 27, 2021, Board of Education Regular Meeting, held at the Middlesex High School Gymnasium, Ms. Ellen Turner responds to the Critical Race Theory (CRT) movement training by saying, *"Trying to get a grasp of the some of the comments tonight. How is it being integrated into the curriculum? . . . Also did an audit of our curriculum and found no books of color."*

47.  The efforts to make the libraries' diverse and representative have been an insurmountable obstacle for the School District despite the fact that maintaining and promoting collections that celebrate multiculturalism and inclusivity in literature are beneficial to all of its students.

48.  This blatant continuous failure of the School District exposes how diversity and inclusivity are advocated for and how it is a true reflection of the educational community that the libraries serve.  It could not care any less.

49. Defendant School District's deliberate indifference to repeated racial discrimination complaints has emboldened racist behavior within the School District.

50.  On or about October 19, 2021, Middlesex High School student, R. G. posted on O'Rylees Auto Parts site (her family's business) a photo referring to an African-American schoolmate as *"blake the monkey."* Exhibit D.

51.  R.G.'s *"blake the monkey"* photo was viewed by Plaintiff D.I. and other African-American students during school hours and on school grounds.

52.  On or about January 10, 2022, Middlesex High School student, S.P. posted a photo on her social media platform referring to African-American schoolmates as *"Nigggeeeeerrrrr."* Exhibit E.

53.  Defendant School District had actual knowledge of R.G.'s "blake the monkey" photo and S.P.'s *"Nigggeeeeerrrrr"* social media post, had authority to take remedial action against both R.G. and S.P., but failed in its legal responsibility to do so.

54.  During the "Communication From The Public" portion of the November 8, 2021, Board of Education Regular Meeting, held at the Middlesex High School Gymnasium, Mr. Ken Beck commented: "the incident started on October 28, 2021, when a group of eight (8) students, Seniors,  had Gorilla and Banana costumes-planned to

14

wear on Halloween. . . . he was *"outraged and could not believe that they were being racist by the Superintendent and School Principal for wanting to wear Banana costumes after being deprived of celebration because of COVID. . . . I would just like to get a rationale behind how bananas are considered racist."*

55. Surprisingly, then Board President, Ms. Kelly Giardina, responded by saying, *"I know you would love an answer from me . . . This is a question that I am not at liberty to answer . . ."*

56. Disturbingly, as more attention was brought to that disgusting Gorilla and Banana costume incident, the Board President Kelly Giardina could not find it in herself to provide an obvious, straightforward answer such as the costumes are offensive and racially insensitive.

57. On November 1, 2021, prior to the November 8, 2021, Board Meeting, influential community members using the online "Friends of the Middlesex Taxpayers" media platform called for the resignation of Superintendent Dr. Frederick D. Williams for suspending the eight white students involved the "Gorilla and Banana" Halloween costume incident.

58. Influential community leader James D'agostino writes, *"Ha anyone found the Gorillas and Bananas . . . Time for BIG BIG changes . . . Ann Marie Kleiber adds, "Why don't you ask Williams? I'm surprised a statement hasn't come out by now. They must have a LOT to hide" . . . The posts continue. "Jerry Tolomeo was a reason given?" . . . "Anne Zavalick still none" . . . Jerry Tolomeo if that's true, then he needs to resign IMMEDIATELY."*

59.  Unfortunately, the racist conduct that the School District's African-American students are cognizant of, as well as subjected to, is not limited to those-above types of incidents.

60.  The School District's deliberately indifferent conduct also extends to racist employment-related determinations.

61.  During the Fall 2019, in an effort to attract students to its Career and Technical Education/Culinary Arts classes, the School District completely renovated Middlesex High School's Culinary Arts classroom (During the April 15, 2019, Regular Meeting, held in the Middlesex High School Library/Media Center, the School Board awarded "a contract for the Project to Frankoski Construction Co., Inc., in the total amount of Four Hundred Forty-Three Thousand One Hundred Dollars ($443,100.00)."

62.  Culinary Arts classes introduce students to skills used in the food and hospitality industry that they can apply to a future career.  They also allow students to work on their Food Handlers Certifications and learn valuable culinary practices, such as safe food handling, sanitization, basic cooking methods and kitchen equipment uses, menu-planning, recipe conversions, and food trends.

63.  On September 1, 2019, Mr. Joshua Murrell, "Chef J," was hired through then Principal, Dr. Alex Guzman, as Middlesex High School's Culinary Arts Teacher.  Mr. Murrell taught Culinary Arts 1, 2, and 3.

64.  On December 3, 2019, during the ribbon cutting ceremony for the renovated classroom, Dr. Frederick D. Williams, Superintendent of Schools, stated that the School District was "*able to secure*

*Chef Josh, who has the appropriate certification as a chef, he is a classically trained chef, and so now, we are now in the process of transforming what used to be the old foods curriculum into a culinary arts curriculum."*

65.  Subsequently, Dr. Alex Guzman, Principal, Middlesex High School, resigned effective June 30, 2020,

66.  Ms. Dana Chibbaro was appointed as Principal of Middlesex High School effective July 1, 2020.

67.  By the end of the 2019-2020 school year, Mr. Joshua Murrell, "Chef J", was in effect, constructively discharged from his employment with the School District as Culinary Arts Teacher due to "an all of a sudden hostile work environment, caused by Principal Chibbarro," whom he referred to as "evil and racist."

68.  Mr. Joshua Murrell left the School District because of the rampant racism at the Middlesex High School and the Middlesex Borough Board of Education's failure to remediate Principal Dana Chibbarro's discriminatory conduct.

69.  Despite repeated complaints of discriminatory conduct Plaintiff D.I. and other African-American students had encountered while in the School District, Principal Dana Chibbarro and other School District administrators expressed absolutely no concern or empathy.

70.  Plaintiff D.I. has suffered and continues to suffer emotionally and educationally as a result of the School District's conduct.  The School District's discriminatory conduct would not have occurred but for Plaintiff D.I.'s race.

71.  To date, the School District has not taken any meaningful action to address the systemic racism that permeates Middlesex High School and its other schools.

72.  In fact, four of the five newly-elected Middlesex school board members (the P.P.Q.R. candidates), installed as of January 5, 2022, are allegedly conspiring to non-renew Dr. Frederick D. Williams employment contract because he has "hired and promoted too many African-American" administrators during his tenure as Superintendent of Schools.

73.  The P.P.Q.R. candidates include Brenda Perry, Danielle Parenti, Shannon Quinn and Patricia Reynolds.

74.  On Halloween Night, November 31, 2021, while pulling a wagon filled with alcohol, as she walked down Beechwood Avenue in Middlesex Borough with influential community leaders Jerry Terrones and Roger Sanchez, newly-elected Middlesex Borough School Board Member, Brenda Perry, allegedly said, "The administration is too dark, it all has to go."

75.  The alleged conspiracy to non-renew Dr. Frederick D. Williams employment contract because he has "*hired and promoted too many African-Americans*" administrators during his tenure as Superintendent of Schools, also extends to newly installed Board President Todd Nicolay.

76.  More specifically, as the School District closed out Black History Month 2022, during the "Communication From The Public" portion of the February 28, 2022, Regular Meeting, Ms. Nadine Pietroski, Vice-President of the Middlesex Education Association, made the following statement:

"I told my children and my husband that this could cost us both personally and professionally, but . . . an issue was brought to my attention by many citizens of the Middlesex Borough, I feel that the gravity of this issue should be brought to your attention . . . *several people in this Community told me that a Board Member referred to an employee as an offensive, racial, harangued slur,* . . . *this racially motivated slur is unacceptable by people who are an elected official and I am looking at all of you in the eye when I say this . . . You or anyone else in an elected position put a blemish on our town . . ."*

77. According to several Middlesex Borough people, Board President Todd Nicolay allegedly made the statement at a celebration party, *"Now that I am President, I am going to get rid of all these niggers and return this district back to how it used to be."*

78. The fact that Ms. Nadine Pietroski felt that speaking out publicly against rampant racism in the School District could "cost" her family and herself both personally and professionally, gives absolute credibility to the allegation that the newly-elected Board President and three (3) other Board Members are conspiring to non-renew Dr. Frederick D. Williams' employment contract because he has "hired and promoted too many African-American" administrators during his tenure as Superintendent of Schools.

79. Knowledge of this alleged conspiracy has been wide-spread among Plaintiff D.I., her parents, and other African-Americans in the School District since July 2021, after the newly-elected members announced their candidacy for office.

80.  Wide-spread knowledge of this alleged conspiracy in the Middlesex community may even go as far back as July 31, 2020, as influential resident Kevin Redzinski, commented in "Friends of Middlesex Taxpayers" that, *"Superintendent Dr. Baker was a nightmare, Dr. Madison was unpopular as well and it seems some are having issues with the present Super. Do your research and find out which of the candidates voted to renew their contracts or took part in making the choice to hire them in the first place. If you re-elect those people you should expect the exact same thing to happen again come hiring time."*

81.  On July 1, 2019, Dr. Frederick D. Williams and the Middlesex Borough Board of Education entered into a three-year employment contract ending on June 30, 2022.

82.  During the February 10, 2020, Regular Public Meeting at the Middlesex High School Library/Media Center, Dr. Frederick D. Williams recommended Mr. Satchell Houghton for the position of Director of Facilities.  Mr. Houghton was appointed effective March 12, 2020.  He currently holds that position.

83.  Mr. Satchell Houghton is African-American.

84.  During the August 16, 2021, Regular Public Meeting at the Middlesex High School Gymnasium, following the August 13, 2021, resignation of Dr. Paul Rafalowski, Dr. Frederick D. Williams recommended Dr. Roberta Freeman for the position of Assistant Superintendent of Schools.  Dr. Freeman was appointed effective August 16, 2021.  She currently holds that position.

85.  Dr. Roberta Freeman is African-American.

86.  On June 8, 2020, during the Regular Public Meeting, Virtual Meeting, Dr. Frederick D. Williams recommended the transfer of Dr. Remi Christofferson from Principal of Parker Elementary School to the position of Principal of Von E. Mauger Intermediate School effective July 1, 2020.  She currently holds that position.

87.  Dr. Remi Christofferson is African-American.

88.  On June 8, 2020, during the Regular Public Meeting, Virtual Meeting, Dr. Frederick D. Williams recommended the transfer of Mr. Jason Sirna from Principal of Von E. Mauger Intermediate School to the position of Principal of Parker Elementary School effective July 1, 2020.  He currently holds that position.

89.  Mr. Jason Sirna is Caucasian.

90.  Each of these employment decisions were extremely controversial and vehemently debated, especially the transfers of Dr. Remi Christofferson and Mr. Jason Sirna.

91.  Having knowledge of the pending, potential non-renewal and/or removal of these African-American administrators, especially Superintendent of Schools, Dr. Frederick D. Williams, has had an adverse educational impact on Plaintiff D..I. and the School District's other African-American students.

92.  The School District does not dispute the rampant racism within its schools, but nonetheless, has failed and continues to fail to take remedial action to protect its African-American students and eliminate the substantial disruption to their education.

**II.  Defendant Middlesex Borough Board of Education has Allowed Discrimination to Exist and Continue against Plaintiffs and her Parents and has Ignored the Issue And Failed to Take Adequate Steps to Address It.**

93.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

94.  For the previous two school years, 2020-2021 and 2021-2022, Plaintiff D.I. has endured racial harassment and discrimination at the hands of her white schoolmates during school hours and on School District grounds.

95.  In addition to being called racial epithets and told that she *"doesn't belong"* on multiple occasions, Plaintiff D.I. has also been affected by physical assaults on her sister by white students, all while attending Middlesex Borough Board of Education schools.

96.  During the 2016-2017 school year, M.I. (Plaintiff's sister) was an eighth grade student at Von E. Mauger Middle School. While watching the movie "Selma" in history class, sometime late in the month of May, M.I. observed a classmate, L.R., laughing at the plight of the African-Americans who were the subjects of the film. M.I. took exception to this behavior since both sides of M.I.'s family are from the State of Alabama and suffered racial harassment, discrimination, and violence at the hands of white people. Classmates were appalled and shocked by L.R.'s horribly inappropriate conduct while the classroom teacher did nothing about it.

97.  During M.I.'s sophomore year at Middlesex High School (2018-2019), the same student, L.R. , launched an unprovoked attack against M.I.  L.R. struck M.I. in the face, knocking-off her

glasses, while students were in the hallway changing classrooms. After Plaintiff D.I.'s father was notified, and responded to the high school, he requested the police officer who was present to take a report to document the incident.  The officer stated it was *"a school matter and nothing could be done by the police department."*

98.  The School District failed to investigate and report the incident to the Board of Education in violation of District Policy 8461- Reporting Violence, Vandalism, Harassment, Intimidation, Bullying, Alcohol, and Other Drug Abuse, District Policy 8465- Hate Crimes and Bias Related Acts, and District Policy 5600- Student Discipline/Code of Conduct, the School District.

99.  Plaintiff Kenneth Irvin filed a formal complaint concerning the two above-incidents and they are documented by the Middlesex Borough Police Department as Case #17-017236.

100. Throughout Plaintiff D.I.'s time in the School District, white schoolmates have also racially harassed her with impunity.

A.  **Eighth Grade Year (August 2020 - 2021)**

101. Late in the month of June 2021, Plaintiff D.I. and S.S. were harassed by S.P., and her friends, as they left the girls bathroom in Von E. Mauger Middle School.  A verbal exchange followed with S.P. and her friends employing the racial slur *"nigger."*  Ms. Baily Klapp, Eighth Grade Science Teacher, was standing nearby witnessing S.P. lose her composure and self-control.  Rather than being concerned with S.P.'s offensive and racially insensitive language, Ms. Baily Klapp was protective of S.P.  Ms. Klapp spoke softly to S.P. briefly until she regained

self-control, allowing S.P. to walk away without sending her to the principal for disciplinary action.  Ms. Klapp then turned around and told  Plaintiff D.I. to *"keep her head down and walk away during these incidents."*

102. S.S., a minor African-American female, attended Von E. Mauger Middle School, in the School District, from approximately September 2016 until June 2019, and is currently enrolled in ninth grade at Middlesex High School.

103. S.P. was allowed to obstruct Plaintiff D.I.'s free movement in the middle school, employ offensive and racially insensitive language in the process, and intimidate, harass, and discriminate against Plaintiff D.I. on the basis of her race, and then walk away with impunity.

104. Ms. Baily Klapp's "keep her head down and walk away during these incidents" response was clearly unreasonable in light of the known circumstances.

105. During the Summer of 2021, Plaintiff D.I. saw a screenshot of S.P. calling another student *"Nigger."*  When she and other African-American student brought this matter to the attention of the School District, nothing was done because according to Middlesex High School Principal Dana Chibbarro, *"it happened during the summer."*

106. It goes without saying that being called a "Nigger" and/or "Blackie" by your white schoolmates (or hearing the term applied to your African-American classmates) exposes African-American children to an environment of discrimination that is so substantial and obvious that a failure to act can only be the result of deliberate indifference.

24

B.   **Ninth Grade Year (August 2021 – Present)**

107. Throughout Plaintiff D.I.'s current 2021 – 2022 school year at Middlesex High School, student harassment continues.  In addition to the repeated use of the profane, insulting and racially derogatory term "Nigger" and/or "Blackie" and other racial slurs by white students, Plaintiff D.I. regularly endures harassment in the hallways of Middlesex High School.

108. On Friday, October 15, 2021, during the Middlesex High School Homecoming Dance, S.P. her friend B.S., were continually following Plaintiff D.I. and S.S. hoping to provoke an incident. When Plaintiff D.I. and S.S. went into the girl's bathroom near the 200 and 300 hallway, they saw S.S. and B.S.  present and they immediately turned and left.  S.P. quickly approached them and made both a racial comment and vulgar gesture by calling Plaintiff D.I. and S.S. "Blackie" and "giving them the finger."  Vice Principal Peter Bovee, observed S.P. and B.S.'s harassing conduct. S.P. and B.S. suffered no meaningful consequences for their behavior.  A week later, Ms. Joyce Kaack told Plaintiff D.I. and S.S. "not to say anything and keep their heads down."  And, rather than referring the incident for HIB investigation or disciplinary action, S.P., and not B.S., was merely asked to leave the Homecoming Dance.

109. Ms. Joyce Kaack is the second teacher, although at a different school in the School District, to tell African-American students when confronted with offensive and racially insensitive language to "say nothing" and just "keep your heads down."

110. Ms. Joyce Kaack's "say nothing" and just "keep your heads down." response was clearly unreasonable in light of the known circumstances.

111. Vice Principal Peter Bovee merely asking S.P., and not B.S., to merely leave the Homecoming Dance was clearly unreasonable in light of the known circumstances.

112. Pursuant *to* N.J.S.A. 18A:37-14, an HIB incident must be reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or any other distinguishing characteristic.

113. In light of the fact that S.P. and B.S. conduct was clearly motivated by Plaintiff D.I. and S.S.'s race, it qualifies as an HIB incident subject to an investigation and resolution.

114. Ms. Joyce Kaack saying *"just keep her head down"* to Plaintiff D.I. and S.S. further contributed to a racially hostile educational environment, including increased racial harassment by other students.

115. Not surprising, Middlesex community members and neighbors have quoted Ms. Joyce Kaack as saying, allegedly, that she is "against that nigger Superintendent."

116. Ms. Joyce Kaack is an ardent supporter of Middlesex High School Principal Dana Chibbarro, "sings her praises," as well as, "the four new ladies (i.e., "P.P.Q.R.") and all that they stand for in changing the administration."

117. One Middlesex community member even went as far as calling these four new ladies (i.e., "P.P.Q.R."), "deplorable, racist pigs."

118. The School District's inaction regarding these incidents, at a minimum, caused Plaintiff D.I. and S.S. to undergo further racial harassment or made them more vulnerable to it.

119. On October 29, 2021, Plaintiff D.I. and S.S. were subject to a verbal attack and physical threat by S.P., B.S., and D.P.-F. in the 500 Hallway while transiting between classrooms.  In an email, S.S. complains to Mr. Schmitt (James Schmitt, Anti-Bullying Specialist, Middlesex High School) that on October 29, 2021, she was standing at Plaintiff D.I.'s locker in the 500 hallway as she does every day after class.  Plaintiff D.I.'s locker is "right next to Sra. Kaack's (Mrs. Joyce Kaack) classroom."  While standing at Plaintiff D.I.'s locker, Plaintiff D.I. "came down the 500 hallway but S.P., B.S., and D.P.-F. were also walking down the hallway with Sra. Kaack in front of Plaintiff D.I.  When S.S. and Plaintiff D.I. saw each other they "started laughing."  S.P. says "What are you doing?" Plaintiff D.I. "continues walking to her locker which is a foot away at this point and says "What are you talking about? You sound insane." S.P. then says, "Shut the f*ck up." . . . Sra Kaack responds to S.S.'s question, "No, I didn't" hear [S.P.] say "Shut the f*ck up" to Plaintiff D.I. and S.S. . . . Student D. P.-F. says "Maybe we should all separate" because S.P. and B.S. "starts yelling at us because they can hear what we are saying to each other."  Plaintiff D.I. "responds to B.S. With "oh so I can't go to my locker now?"  S.P., B.S., and D. P.-F. Are deliberately blocking her locker.  Then B. S. replies saying "No, you can't." The Plaintiff D.I. says, "Oh I'm sorry for disobeying your orders my queen" as they both "get on their knees

while saying this to B.S.  S.S. then says S.P. "proceeds to get up on me and say[s] "Suck my d*ck in those words.". . . "Sra. Kaack steps in between me and [S.P.] and tries to take [S.P.] away from me and walk down the hallway going the other way. [B.S.] and [D. P.-F.] follow [S.P.] and Sra. Kaack down the hallway away from us and we start walking the opposite direction as well. . . " Exhibit F.

120. The offensive language, physical intimidation, and racially motivated harassment Plaintiff D.I. and S.S. endured from S.P., B. S, and this time D.P.-F., went beyond the simple acts of teasing and name-calling among school children.

121. S.P., B.S., and D. P.-F's conduct placed Plaintiff D.I. and S.S. in reasonable fear of physical and emotional harm.

122. Since the School District had actual knowledge of S.P. being a serial harasser of African-American students, it was aware of the attendant risk that she posed to both Plaintiff D.I. and S.S.

123. That risk also included influencing additional students, like B.S. and D.P.-F., to mutually engage in racially motivated harassment and discrimination against Plaintiff D.I. and S.S.

124. Ms. Joyce Kaack walking away with S.P., B.S., and D. P.-F. without referring them to either Ms. Dana Chibbaro, Principal of Middlesex High School or Mr. Peter Bovee, Assistant Principal of Middlesex High School, for disciplinary action further contributed to the Middlesex High School's racially hostile educational environment.

125. On or about November 1, 2021, S.S. advised Mr. James Schmitt, Anti-Bullying Specialist of Middlesex High School, of this incident via his direct School District email account.   No investigation ensued.

126. In light of the fact that S.P., B. S., and D. P.-F.'s conduct was clearly motivated by Plaintiff D.I. and S.S.'s race, it clearly should have qualified as an harassment incident subject to investigation.

127. Plaintiff Kenneth Irvin was compelled to file a formal complaint concerning the two above-incidents and they are documented by the Middlesex Borough Police Department as Case #17-017236.   Those specific incidents further demonstrate the escalating racial harassment and discrimination at Middlesex High School.

128. Even worse, at no time during the current 2021-2022 school year has Mrs. Gina Shehu, the School Counselor 9-12 of Middlesex High School, met with Plaintiff D.I. or S.S. to discuss the racially motivated incidents and the emotional and educational impact that it has on them.

129. The racially hostile environment is severe, pervasive and persistent enough that it interferes with and limits Plaintiff D.I. and her African-American classmates' ability participate in or benefit from the activities provided by the Middlesex Borough Board of Education.

130. The racial harassment and discrimination directed at other African-American students, like *blake the monkey,"* further

establishes the hostile environment in the Middlesex High School and Middlesex Borough School District.

131. In fact, any reasonable student of the same age, maturity level, and protected characteristic would consider such student-on-student conduct alleged in the above-paragraphs sufficiently severe or pervasive enough to create an intimidating, hostile, and offensive school environment.

132. The Middlesex Borough Board of Education is intentionally creating a hostile educational environment, in addition to engaging in unlawful discrimination, failing to take appropriate remedial action in response to incidents of racial harassment at the Middlesex High School.

133. Plaintiff Kenneth Irvin, has made repeated complaints of discrimination to board members and administrators but no meaningful steps were taken to address the harassment and discrimination that his daughter repeatedly endures.

134. In fact, Plaintiff Kenneth Irvin's repeated public complaints of racial harassment and discrimination had the unintended consequence of making matters significantly worse for his daughter, Plaintiff D.I.

135. On November 8, 2021, during the Regular Public Meeting, Middlesex High School Gymnasium, Plaintiff Kenneth Irvin noticed and then "wanted to address a couple of incidents in reference to the Agenda." According to Agenda, Mr. Irvin's "daughter's S.I.D. was under H.I.B. investigations . . . and '[he did] not know the details of that incident'" identified as HIB Case No. 223578.

136. During the "Communication From The Public" portion of the November 8, 2021, meeting, Plaintiff Kenneth Irvin further commented, *"There was a HIB incident on the agenda but no information was available (HIB Case No. 223578). He has four students that attended the school district. He has seen "an uptick in racist behavior." His children have been involved in some of these incidents. This is not new but he sees more students fighting and lashing back. He implored the Board to take matters seriously to address racist antics."*

137. Parents of the students who are parties to the investigation shall be entitled to receive information about the investigation in accordance with federal and State law and regulation, including the nature of the investigation, whether the district found evidence of HIB or whether discipline as imposed or services provided to address the incident of HIB.  This information shall be provided in writing within 5 school days after the results of the investigation are reported to the board.  District Policy 5512 – Harassment, Intimidation, and Bullying. Exhibit G.

138. In a letter dated December 2, 2021, from Dr. Frederick D. Williams, on or more than twenty-four (24) calendar days after the November 8, 2021, Meeting, Plaintiff Kenneth Irvin was informed that "at its meeting of November 22, 2021, the Board of Education voted to affirm the Superintendent's recommendation regarding case #223578."  Exhibit H.

139. The Board of Education substantiated a finding of harassment, intimidation or bullying against Plaintiff D.I. without providing Plaintiff Kenneth Irvin with information about the investigation pursuant to N.J.S.A. 18A:37-17(b)(6)(d) and District Policy 5512 – Harassment, Intimidation, and Bullying.

31

140. On February 9, 2022, Plaintiff Kenneth Irvin submitted an O.P.R.A. Request for information about the HIB Case No. 223578 investigation.  He received a copy of Middlesex High School Principal Dana Chibbarro's redacted notes on February 11, 2022. Exhibit I.

141. According to Principal Dana Chibbarro's redacted notes, Plaintiff D.I. received a meme from a student and "shared" it with another student.  The meme read in total, "for real – when I say kill yourself I mean it.  Literally I don't give a f__ about your life."

142. Pursuant *to* N.J.S.A. 18A:37-14, an HIB incident must be reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or any other distinguishing characteristic.

143. There is no evidence in Principal Dana Chibbarro's redacted notes indicating that Plaintiff D.I.'s actions of *"sharing"* the meme through social media were motivated by any actual or perceived characteristic of the meme receiving student.

144. In examining Principal Dana Chibbarro's redacted notes, there was not even a student's name attached to the *"shared"* meme.

145. Plaintiff D.I.'s only motivation for *"sharing"* was her personal relationship with S.S., the original sender of the meme.

146. Additionally, the *"sharing"* of the meme conduct did not substantially disrupt or interfere with the orderly operation of the school or the rights of the meme receiving student.

147. Plaintiff D.I. did not engage in conduct that constituted an act of harassment, intimidation, or bullying regarding HIB Case #223578.

148. The Middlesex Borough Board of Education's arbitrary, capricious and unreasonable finding in regard to HIB Case #223578 further creates a hostile environment that interferes with Plaintiff D.I.'s educational program.

149. The HIB Case #223578 finding also interferes with S.S.'s educational program and every other African-American student's in the School District of the same age and race as Plaintiff D.I.

150. Additionally, the Middlesex Borough Board of Education's arbitrary, capricious and unreasonable finding in regard to case #223578 sends a "chilling effect" on Plaintiff Kenneth Irvin's participation in or use of the "Communication From The Public" complaint process as during November 8, 2021, Regular Public Meeting.

151. The Board of Education's arbitrary, capricious and unreasonable finding was racially motivated and in retaliation for Plaintiff Kenneth Irvin's complaining about the *"uptick in racist behavior"* in the School District during the November 8, 2021, Regular Public Meeting.

152. The Middlesex Borough Board of Education's arbitrary, capricious and unreasonable finding in regard to case #223578 sends

a "chilling effect" on other African-American parents' participation in or use of the "Communication From The Public" complaint process during the School District's Regular Public Meetings.

153. The School District does not dispute the existence of racism within its six (6)schools, but nonetheless, has failed and continues to fail to take any meaningful action to protect its African-American students and eliminate the substantial disruption to their education.

154. School staff members have little, if any, proper training or experience with respect to properly responding to reports of racism. Again, since there is no mandatory deadline or progressive disciplinary action leading to termination for failure to complete "mandatory" racial harassment training for staff members hired before and after September 2020, staff members routinely fail to complete said training.

155. Administrators have admitted to students that classroom teachers in the School District *do not know what they are doing* with respect to racial issues.

156. Teachers are present when slurs are used against African-American students, administrators are informed of racist behavior, including physical assault and threats, and parents routinely escalate racist incidents to administrators and school board members. Yet, the Defendant Middlesex Borough Board of Education has failed to take meaningful action.

157. Moreover, white students do not suffer meaningful consequences for their intentionally racist and discriminatory actions, but instead are protected.

158. On Tuesday, October 19, 2021, during a meeting between Ms. Dana Chibbaro, Principal of Middlesex High School, and S.S.'s mother, S.S.'s mother advised Principal Chibbarro that S.P. "was targeting her daughter staring first on October 11th and proceeding through the dance."  The Middlesex High School Homecoming Dance was on Friday, October 15, 2021.  S.S.'s mother complained that S.P. was bullying, her daughter, calling her "blackie" and "gave her the finger."  Principal Chibbaro identified the Complaint as HIB Case No. 223755. Exhibit I.

159. The full School Board has met on October 25th, November 8th, November 22nd, December 13th, 2021, January 5th, January 24th, and February 28, 2022, with neither Ms. Stacy Ulmer, District's Anti-Bullying Coordinator, Mr. James Schmitt, Anti-Bullying Specialist of Middlesex High School, nor Principal Chibbarro, having investigated and presented HIB Case No. 223755 findings to the Superintendent of Schools and Board of Education for discussion and resolution.

160. In addition, Mrs. Gina Shehu, the School Counselor 9-12 of Middlesex High School, has not meet with S.S. to discuss the racially motivated incident and the emotional and educational impact that it had on S.S.

161. On Tuesday, October 19, 2021, Ms. Dana Chibbaro, Principal of Middlesex High School, issued S.S. a one (1) day suspension for involvement in dispute with S.P., who continuously makes insensitive comments about S.S.'s deceased father with impunity.

The School District has screenshots of S.P.'s comments.  S.S.'s response mirrored S.P.'s in intensity, tone, and language.

162. Pursuant to N.J.S.A.18A:37-4, the suspending principal shall immediately report the suspension to the chief school administrator, who shall report it to the district board of education at its next regular meeting.

163. The next regular meeting was held on October 25, 2021, in the Middlesex High School Gymnasium.  According to the October 25, 2021, Meeting Minutes, Board Members "determined to meet in Executive Session to discuss matter/s involving Personnel Matters," only. Exhibit J.

164. S.S.'s student discipline matter, suspension, was not designated by code and discussed in Executive Session on October 25, 2021, by the Middlesex Borough Board of Education, in violation of N.J.S.A.18A:37-4 and District Policy 5610, Suspension. Exhibit K.

165. At Middlesex Borough school board meetings, too, the School District is repeatedly informed of the racist culture that has existed for years throughout the district's schools and continues to exist to this day.

166. During the "Communication From The Public" portion of the November 8, 2021, Board of Education Regular Meeting, held at the Middlesex High School Gymnasium, Plaintiff Kenneth Irvin complained about incidents of racial harassment in stating, ". . . *this has not been an uncommon occurrence in Middlesex.  I have been a parent here for 13 years and put 4 kids went through this school district . . .* '*I Have screen shots of racial slurs*

*either directed  to my children or to other children.  My children have been involved or victims of these incidents' . . . It's always been here and no one has done a darn thing about it.'"*

167. The extent to which white students do not suffer meaningful consequences for their intentionally racist and discriminatory actions is without limit.

168. For example, on or about November 9, 2021, while the students were changing classrooms between periods, S.P. had an emotional, behavioral "breakdown" near Plaintiff D.I.'s locker in the 500 hallway.  Since the Language and Literacy Development Teacher, Ms. Joyce Kaack's classroom is close bye, she heard the disturbance.

169. S.P.'s conduct was so disruptive that the Middlesex Borough police were called over to the high school and Principal Dana Chibbaro  and Mr. Peter Bovee, Assistant Principal, convened a *"shelter in place."*

170. Completely unrelated to S.P.'s *"shelter in place"* incident, the Middlesex High School had a Fire Drill on November 8, 2021 and a fifteen (15) minute Emergency Drill (Bomb Threat) on November 22, 2021. Exhibit L, Minutes from the December 13, 2021, Regular Public Meeting held at the Middlesex High School Peter J. Diskin Auditorium.

171. These tenured, veteran administrators determined that S.P. posed a danger to herself and/or to other students, including Plaintiff D.I. who was a subject of S.P.'s offensive and demeaning language.  S.P. said to Plaintiff D.I. in front of Ms. Kaack, *"Shut the f*ck up,"* and *"you don't belong here."*

172. S.P.'s conduct placed Plaintiff D.I. in reasonable fear of physical and emotional harm.

173. On or about November 9, 2021, the Middlesex High School students were approximately one hour late being released from school as a direct result of S.P.'s *shelter in place"* incident.

174. Dr. Fredrick D. Williams, Superintendent of Schools, apparently, "was not informed of this incident" as it was taking place.

175. S.P. continues to be an ongoing threat of disruption to Plaintiff D.I.'s, and other students,' educational process.

176. S.P.'s conduct should have been the subject of a disciplinary hearing to determine whether loss of privileges, in-school/out-of-school suspension, and/or any other disciplinary action was warranted.

177. S.P.'s conduct is repeatedly disruptive of the educational process and oftentimes intentionally prevents Plaintiff D.I. from changing classrooms quickly and orderly.

178. Any reasonable student of the same age, maturity level, and protected characteristic would consider such student-on-student conduct sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment.

179. Additionally, on or about January 14, 2022, while the students were again changing classrooms between periods, S.P. had another emotional, behavioral "breakdown" near Plaintiff D.I.'s locker in the 500 hallway.

180. During this second "breakdown," Mr. Peter Bovee, Middlesex High School's Assistant Principal, stood in front of S.P. while she sat on the hallway floor interfering with the Plaintiff D.I. and the other students trying to transition to their next classrooms.  According to the Middlesex High School Bell Schedule (Regular Day) students only had four (4) minutes to change classrooms.  Not only did students report to class untimely, students were subsequently released from school approximately thirty (30) minutes late.

181. Completely unrelated to S.P.'s second "*breakdown*" incident, the Middlesex High School had a 10-minute Fire Drill on January 25, 2022, and a 10-minute Emergency/Lockdown Drill on January 5, 2021. Exhibit M, Minutes from the February 28, 2022, Regular Public Meeting held at the Middlesex High School Media Center. Exhibit M.

182. Even though S.P. is *a student without a disability* who repeatedly is substantially disruptive of the educational process, she continues to violate District's Policy 5600, Student Discipline/Code of Conduct with impunity. Exhibit N.

183. Because of the school's failure to take action to stop the racial harassment and discrimination, and while all of this harassment is going on, Plaintiff D.I. wanted either Ms. Kaack, Mr. Bovee, or Principal Chibbaro, to provide her with an opportunity to either change lockers, post a camera near her locker, have an aide escort her to class, leave early from class, or any other remedy to eliminate the harassing environment that she endured on a regular basis. Not one opportunity was provided. Exhibit O.

184. Plaintiff D.I. only wanted to make sure that she was safe while in school, to lower the chances of more harassment happening and by more students, and to give Plaintiff D.I. some flexibility so that she grades would not begin to suffer.

185. S.P.'s conduct should have been the subject of a disciplinary hearing to determine whether loss of privileges, in-school/out-of-school suspension, and/or any other disciplinary action was warranted.

186. Conversely, African-American students, in general, are disciplined at a far higher rate than their white schoolmates in the School District:

| The Office of Civil Rights Survey Data (Survey Year: 2017)[1] | | | |
|---|---|---|---|
| School | % of Student Population that is Black or African American | % of In-School Suspensions of Black or African-American Students | % of Out-of-School Suspensions of Black or African-American Students |
| MMBOE | 7.0% | 15.8% | 28.9% |
| Middlesex High School | 6.8% | No data | 8.3% (M) |
| Parker Elementary School | 6.8% | No data | 14.3%  (M) |
| Von E. Mauger Middle School | 8.2% | No data | 8.3% (M), 7.7% (F) |
| Watchung Elementary School | 7.1% | No data | None Reported 100% |
| Hazelwood Elementary School | 3.4% | No data | None Reported 100% |

187. The Middlesex Borough Board of Education's deliberate indifference to student-on-student racial harassment and discrimination has resulted in widespread emotional and educational injury to Plaintiff D.I., S.S., and other African-American students throughout the School District. 188. Because of the severe and pervasive racial harassment and discrimination,

---

[1] Office of Civil Rights Data Collection, available at https://ocrdata.ed.gov/DistrictSchoolSearch#districtSearch (last visited February 28, 2022).

Plaintiff D.I. began text messaging her father during school hours for emotional and mental support.

189. Due to Plaintiff D.I.'s increasing frustration, loneliness, and other emotional injury, she no longer wants to attend Middlesex High School and does not feel welcome.

190. The same is said for Plaintiff K.M. Her allegations similarly arise from Defendant's intentional deliberate indifference and failure to respond to multiple acts of racial harassment and discrimination directed at her by schoolmates enrolled at the Middlesex Borough School District.

191. Some of the following allegations are discrete incidents. Others can be consolidated into a general allegation that a racially hostile environment exists in the Middlesex Borough School District.

192. As a student enrolled at Von E. Mauger Middle School, Plaintiff K.M., and her mother, informed administrators and teaching staff members about student-on-student racial harassment since the 2019-2020 school year, yet Defendant failed to take any meaningful action.

193. Plaintiff K.M. attended Von E. Mauger Middle School from 2017-2020. She has attended Middlesex High School since 2020 to the present.

**A. Eighth Grade Year (August 2019 – 2020)**

194. While attending Von E. Mauger Middle School, K.M. was called "nigger" and other racial epithets on multiple occasions

in school classrooms and in open areas such as hallways and bathrooms. Most of these incidents of racial harassment occurred in the presence of classroom teachers.

195. Plaintiff K.M. was aware that teachers overheard the racial slurs targeted toward her. Teachers rarely intervened.  K.M. was very aware that teachers determined not to intervene, significantly impacting her sense of safety, mental and emotional well-being, and self-esteem.

196. During or around the month of November, 2020, a Caucasian, male classmate directed racial slurs toward Plaintiff K.M., by calling her a "nigger."

197. Plaintiff K.M.'s mother reported the racially harassing student and incident to the Von E. Mauger Principal Dr. Remi Christofferson.

198. Principal Christofferson downplayed the racial slur and did nothing more than make the student apologize for calling Plaintiff K.M. a "nigger."  No disciplinary action was taken against the Caucasian, male classmate.

199. Principal Christofferson is an African-American, but in light of the rampant racially hostile environment at the School District she thought is best not escalate the complaint to Central Office administrators.

**B. Ninth Grade Year (August 2020 – 2021)**

200. Plaintiff K.M. and other African-American students were repeatedly called "nigger" and other racial epithets by

Caucasian schoolmates. They were also called "monkeys" and told that their "skin was dirty." Such incidents, which oftentimes occurred in the presence of teaching staff members, took place on a daily or weekly basis.

201. Yet, after being reported to James Schmitt, Middlesex High School's Anti-Bullying Specialist, not a single student was held accountable for targeting African-American students. In fact, an harassment, intimidation, and bullying (H.I.B.)investigation was neither initiated nor were any statements gathered by Middlesex High School's H.I.B. counselors.

**C. Tenth Grade Year (August 2021 – Present)**

202. On January 14, 2022, M.W., a Caucasian, male classmate, directed racially motivated remarks toward Plaintiff. He racially harassed K.M. in asking if her hair is "fake", does she "wash it", and saying that she is "probably bald." **Exhibit P.**

203. M.W. further stated in front of a crowd of other students that "Black kids do not have fathers in their lives" and because K.M. is Black, she does not have a father. Id.

204. K.M.'s friend, A.B., who is also a sophomore, female, and African-American, found M.W.'s remarks to be objectively offensive.

205. Plaintiff K.M. immediately contacted her mother and left school early on that day due to the resulting mental and emotional trauma. This incident would not have occurred but for the clear unreasonableness of the Defendant's response to K.M.'s previous complaints of student-on-student racial harassment.

206. Ms. Moore, immediately contacted and reported M.W. and the incident to Middlesex High School Principal Dana Chibbaro.

207. As the chief administrative officer or highest ranking building administrator, Principal Chibbaro has the authority to take corrective action to end the racial harassment.

208. During the conversation, Principal Chibbaro appeared unsympathetic and downplayed the racially motivated incident. Plaintiff's mother discussed her disappointment and frustration that she had previously reported these types of incidents and no disciplinary action was ever taken against K.M.'s Caucasian, male classmates.

209. Plaintiff's mother discussed the "no hair" and "no father" incidents at length during this conversation with Principal Chibarro.

210. Principal Chibbaro appeared unsympathetic and downplayed the racially motivated incident in reference to Plaintiff K.M.'s hair by saying, "What, it's just hair, right?"  Ms. Moore spent time explaining the significance of hair in the Black culture.

211. Principal Chibbaro further displayed her inability to understand the impact of the "no father" racial stereotype on Plaintiff K.M., by noting that Ms. Moore is "a single mother."

212. Ms. Moore spent additional time explaining that despite the stereotype, most fathers, including K.M.'s, are not absent from their children's lives. That missing Black father stereotype really needs to end as it is not the reason that K.M. continues

to be racially harassed in the classrooms and hallways of
Middlesex High School.

213. Ms. Moore inquired as to whether disciplinary action(s) was
taken against M.W., Principal Chibarro's response was, "due to
privacy protections, she was unable to disclose that
information."

214. Upon ending the conversation, Ms. Moore requested that
Principal Chibarro arrange for the parents of both families to
meet with Principal Chibarro to discuss and reach some type of
resolution. Principal Chibarro refused to arrange such meeting.

215. Defendant subsequently conducted an investigation and found
that M.W. did target the racially motivated, "no hair" and "no
father" remarks toward Plaintiff K.M. Exhibit Q.

216. Defendant found that M.W. engaged in racial harassment
subject to *disciplinary action under district policy*, yet
Defendant imposed absolutely no disciplinary measures against
the Caucasian, male student.

217. Defendant also refused Ms. Moore's request to change M.W.'s
class schedule or to reassign him to another classroom(s) at
Middlesex High School to which Plaintiff was assigned during the
2021-2022 school year.

218. Defendant has no regard for Plaintiff K.M.'s sense of
safety, mental and emotional well-being, and self-esteem.

219. On April 4, 2022, M.W., the same Caucasian, male student,
called K.M.'s friend, A.B. , a "BOMBLACAT" and stating "it's

nothing that you can do about it." Bomblacat is an expletive Jamaican Patwah slang word for a menstrual pad or toilet paper. The phrase is used as an insult or an interjection expressing disgust or anger. If a schoolmate is called a bomblacat, she is basically being called an "asswipe," or a menstrual pad.

220. However, given the context, tone, and circumstance in which M.W. targeted A.B., in front of K.M. and other students, the term "BOMBLACAT," was intended as a racial slur. Exhibit R.

221. This incident, including all of the others in which Caucasians called African-American students "monkey," triggered Plaintiff K.M. to run to the bathroom and text her mother saying that she "can't handle the school and she's tired of the racist remarks." Id.

222. M.W.'s angry and aggressive targeting caused Plaintiff to experience fear and intimidation. K.M. was afraid for her safety.

223. M.W. again engaged in racial harassment subject to *disciplinary action under district policy*, yet Defendant imposed absolutely no disciplinary action against him.

224. Defendant again refused Ms. Moore's request to change M.W.'s class schedule or to reassign him to another classroom(s) at Middlesex High School to which Plaintiff K.M. was assigned during the 2021-2022 school year.

225. After this second incident, Ms. Moore again requested a meeting with M.W.'s parents. She was seeking a safe place to express their concerns to M.W.'s parents and to request

assurances that her daughter was safe. Principal Chibarro did
not arrange a meeting, but rather diminished Plaintiff K.M.'s
experience and denied that racism was an issue.

226. Defendant continued to make administrative decisions that
adversely impacted Plaintiff's sense of safety, mental and
emotional well-being, and self-esteem.

227. Defendant never imposed discipline against M.W. for
racially harassing Plaintiff K.M.  It also did not reassign his
classrooms or refer him to the Anti-Bullying Coordinator, Anti-
Bullying Specialist, Guidance Counselor, School Safety/School
Climate Team, school psychologist, or Child Study Team, pursuant
to district policy, for counseling.

228. Ms. Moore spoke to, as well as, emailed Superintendent of
Schools Dr. Frederick Williams about the disruption that the
racial harassment is having of K.M.'s well-being and academic
progress.  Notwithstanding, Defendant has made no attempt to
accommodate Plaintiff's mental and emotional needs or to provide
equitable home-based instruction.

229. In an email dated April 6, 2022, Ms. Moore advised
Superintendent of Schools, Dr. Williams, Assistant
Superintendent Dr. Freeman, and Director of Special Services,
Ms. TaNia Taylor, that Plaintiff has a history of suicidal
ideation. Exhibit S.

230. Ms. Moore feared that Plaintiff K.M.'s mental health could
decline to the point where K.M. would consider suicide. If you
have to frequent a place every day where you feel like you don't
belong, are racially harassed, and where you don't feel safe, it

48

is definitely going to take a toll on your emotional and mental health.

231. Absent any other alternative offered by Defendant, on April 6, 2022, Ms. Moore requested that Plaintiff K.M. be switched to distance learning (i.e., Home Schooling) for the remaining 2021-2022 school year due to the ongoing racial harassment impacting her mental health and her education. Id.

232. According to Defendant's 2021-2022 Calendar, as of April 6, 2022, only forty-six (46) days remained in the school year. That is, forty-two (42) regular full days and four (4) early dismissal days. Exhibit T.

233. In a reply email dated April 7, 2022, Superintendent of Schools, Dr. Williams, stated, "I need to clarify for everyone on this chain that neither the district nor the school offered home instruction to [K.M.] nor did we request that she remain at home." Exhibit S.

234. In that same April 7, 2022, reply email, Dr. Williams wrote to Ms. Moore, "I have explained Home Instruction and that it is not a substitute for school given that it is only four (4) hours per week." Id.

235. Defendant's assertions concerning Plaintiff K.M.'s home schooling request are contrary to District Policy 2412, Home Instruction Due to Health Condition, which was revised in May 2019. Exhibit U.

236. First, in relevant part, District Policy 2412 states, "For a student without disability, the home instruction shall be ten

hours per week to meet the New Jersey Student Learning Standards, and the requirements of the Board for promotion to the next grade level." Id.

237. Second, "The Board of Education *shall* provide instructional services to an enrolled student . . . when the student is confined to the home or another out-of-school setting due to a temporary or chronic health condition or a need for treatment that precludes participation in their usual education setting." Id.

238. Third, "The teacher shall provide instruction for the number of days and length of time sufficient to continue the student's academic progress and dependent upon the student's ability to participate." Id.

239. Fourth, "A parent's request for home instruction shall include a written determination from the student's physician documenting the projected need for confinement at the student's residence . . . for more than ten consecutive school days . . . The written determination from the student's physician shall be forwarded to the school physician, who *shall* either verify the need for home instruction or provide reasons for denial." Id.

240. Finally, District Policy 2412 states that, "The Board reserves the right to withhold home instruction when the reason for the student's confinement is such as to expose a teacher to a health hazard or dangerous home situation; when a parent, legal guardian or other adult twenty-one years of age or older, who has been designated by the parent or legal guardian, is not present during the hours of instruction; or when the condition

of the student is such as to preclude benefit from such instruction. Id.

241. Defendant deliberately withheld from Ms. Moore that pursuant to District Policy 2412, Plaintiff had a right to request home instruction supported by a written determination from her physician and that only the Middlesex High School physician is authorized to either grant or deny the request.

242. Equally important is the fact that none of the reserved rights included in District Policy 2412 exist to justify Defendant's withholding of home instruction from Plaintiff K.M. as requested from April 7, 2022 until June 22, 2022.

243. Even though Ms. Moore provided advance notice to the Defendant prior to Plaintiff K.M. being absent from school, and the excuse for the absence was valid, Ms. Moore was only able to allow K.M. to remain home from school for ten (10) days.

244. Defendant made it plainly evident that Plaintiff K.M.'s absences were unexcused and subject to the consequences regarding truancy. In accordance with the provisions of N.J.A.C. 6A:16-7.6 and Defendant's Policy and Regulation 5200, a student's absence from school will either be excused or unexcused. Unexcused absences will count toward truancy. Exhibit V.

245. Despite being cognizant of the fact that Plaintiff K.M. is responsible for the completion of assignments missed because of her 10-day absence, Defendant failed to send work home to her during that time period.

246. Instead of accommodating Plaintiff's request for emergent home-based instruction, the District recommended to refer K.M. to the "Child Study Team/Evaluation process" and "to determine if there are other ways that the district may support her (i.e., change M.W.'s class schedule or reassign him to other classrooms)." Exhibit S.

247. The Child Study Team is comprised of the School Psychologist, the School Social Worker, and the Learning Disabilities Teacher Consultant (LDT-C), as determined by the New Jersey Department of Education. Through the use of evaluations the Child Study Team determines whether or not a child is in need or eligible for special education services. The Speech therapist and other related services providers also work in conjunction with the Child Study Team, when such services are needed.

248. In an email dated April 7, 2022, Superintendent of Schools Dr. Williams advised Ms. Moore that he has "spoken to the Director of Guidance and requested that she review the schedules of the students to see if they are in the same class(s) and to see if there are options available." Id.

249. Defendant has failed to provide any additional information concerning the outcome of the "review" of the schedules as well as the "options available."

250. Plaintiff K.M. has had numerous interactions with Defendant's administrators and teaching staff members while attending Von E. Mauger Middle School and Middlesex High School and only since speaking out against racial harassment, does Defendant seek to declare that she is a child with a disability

251. Plaintiff K.M. is not, and has never been, eligible for special education and related services. And, any evaluation administered by the Middlesex Borough Board of Education designating K.M. as disabled would be erroneous.

252. Resulting from the racial harassment at Middlesex High School, Plaintiff K.M.'s education has been impacted.  Her grades have dropped.

253. Plaintiff's personality has also gone from fun-loving child to an introvert. She spends most of her time at home, in her bedroom.  This was all caused by the Defendant's deliberate indifference to Middlesex High School's racially hostile educational environment.

254. The unlawful racial harassment alleged in this Amended Complaint was so severe and pervasive that is deprived Plaintiff R.M. of full access to the educational opportunities and benefits required by Title Vi, the NJLAD, and the U.S. Constitution's Equal Protection Clause that the Defendant provides to each student.

255. As a result of the harassment endured while attending Middlesex High School, Plaintiff D.I. and K.M have been discriminatorily deprived of the educational benefits of a supportive, scholastic environment free of racism and harassment:

    a)  The School District had substantial control over the circumstances of the harassment Plaintiff D.I. and K.M. endured.

    b)  The incidents described above occurred on MBBOE's grounds or its property, including, for example, shouts of "nigger" and "blackie" in the hallways and threats in or near

the classroom and bathroom of physical assault during school
hours or school activities.

c)    The School District exercised the requisite control
because Plaintiffs' harassers are classmates and schoolmates
and it had disciplinary oversight over the harassers.

d)    The School District was deliberately indifferent to the
student-on-student harassment. Its responses to the
harassment of Plaintiff D.I. and S.S. took two forms:
immediate non-disciplinary responses by allowing S.P, B.S.,
and D.P.-F. to just walk away from the incidents and having
an administrator physically standing over and shielding S.P.
from other students.

e)    Its responses to the harassment of Plaintiff K.M took
three forms: immediate non-disciplinary responses to M.W.'s
conduct, a refusal to provide forty-two (42) regular full
days and four (4) early dismissal days of home instruction,
and an arbitrary and capricious referral to the Child Study
Team.

f)    In light of the fact that the incidents involved repeat
offenders, and known circumstances, the School District's
lack of disciplinary responses can only constitute
intentional deliberate indifference to discrimination. Its
responses were not reasonably calculated to end either
Plaintiff D.I.'s or Plaintiff's K.M.'s harassment.

g)    Even though they were ineffective in light of the known
circumstances, the School District continued to just use the
same non-disciplinary responses to no avail.

h)    The Middlesex Borough Board of Education ignored the
many indicators that greater, more directed action was needed
in response to student-on-student harassment of both
Plaintiffs D.I. and K.M.

256. Defendant Middlesex Borough Board of Education's repeated
failure has resulted in widespread injury to Plaintiffs D.I. and
K.M, S.S., A.B., and other African-American students throughout
the School District.

## CAUSES OF ACTION

### COUNT I

### 42 U.S.C. § 1983

257. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

258. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs D.I. and K.M. have the right to equal access to an educational environment free from harassment and discrimination on the basis of race.

259. At all relevant times, Defendant Middlesex Borough Board of Education had unconstitutional customs, policies, or practices of: (a) Failing to appropriately investigate and respond to complaints of racial harassment and discrimination, including reports by Plaintiff D.I. and her father and Plaintiff K.M. and her mother; (b) Failing to enforce its School District policies and procedures prohibiting discrimination and harassment when student victims are African- American; and (c) Failing to adequately train Defendant School District's administrators and staff members on how to recognize, address, and prevent racial harassment and discrimination against its students.

260. Defendant School District followed these unconstitutional customs, policies and practices not only with regard to Plaintiffs, but also with regard to racial harassment of other African-American students and staff members at its schools.

261. Defendant School District's unconstitutional customs, policies, or practices constituted disparate treatment of

Plaintiffs and other African-Americans based on their race, in violation of the Equal Protection Clause.

262. Defendant School District's customs, policies, and practices for responding to reports of racial harassment and discrimination, including Plaintiffs' reports, were so clearly inadequate that they give rise to a reasonable inference that Defendant Middlesex Borough Board of Education consciously acquiesced in the harassment and discrimination.

263. Defendant School District violated Plaintiffs' right to equal protection of the laws on the basis of her race by acting with deliberate indifference to Plaintiffs D.I.'s and K.M's complaints of racial harassment and discrimination, as well as to the racially hostile educational environment Plaintiffs D.I. and K.M. suffered because of Defendant Middlesex Borough Board of Education's failure to take meaningful corrective action. Defendant School District's deliberate indifference included, without limitation:

    a) Ignoring or minimizing racial slurs repeatedly used by white students against Plaintiffs and other African-American students;

    b) Ignoring reports of racial harassment and discrimination made by students and parents on behalf of African-American students, including Plaintiffs;

    c) Creating a hostile educational climate that tolerates racial harassment and discrimination, including the threat of bodily harm to Plaintiffs and other African-American students;

    d) Failing to appropriately discipline Caucasian students and staff members who subjected Plaintiffs and other African-American students to racial harassment and discrimination;

e)   Refusing to take meaningful remedial action to address complaints of race-based physical assaults against African-American students, including Plaintiffs;

f)   Failing to take meaningful action to correct the conditions causing the racial harassment and discrimination and to prevent its recurrence; and,

g)   Failing to provide adequate training for its administrators and staff members to prevent and address racial harassment and discrimination despite having notice that its procedures were inadequate and resulting in a violation of Plaintiffs' constitutional rights.

264. Defendant School District's actions and decisions have deprived Plaintiff D.I. of the privileges and immunities secured by the United States Constitution and laws, in violation of 42 U.S.C. § 1983.

265. As a direct and proximate result of Defendant School District's violation of Plaintiff D.I.'s equal protection rights under the Fourteenth Amendment of the United States Constitution, Plaintiff D.I. has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and other damages.

266. As a result of Defendant Middlesex Borough Board of Education's equal protection violation, Plaintiff D.I. is also entitled to her attorney's fees and costs.

<u>**COUNT II**</u>

**Title VI, 42 U.S.C. § 2000d**

267. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

268. 42 U.S.C. § 2000d, commonly referred to as Title VI, and its implementing regulations prohibit discrimination in a federally-funded school on the basis of a student's race.

269. Specifically, 42 U.S.C. § 2000d provides that "No person in the United States shall, on the ground of race, color, or national origin, be exclude from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

270. Defendant Middlesex Borough Board of Education is a recipient of federal funds.

271. Plaintiffs D.I. and K.M. were subjected to harassment, discrimination, and disparate treatment on the basis of their race.

272. Defendant Middlesex Borough Board of Education had notice of the racial hostility occurring at Middlesex High School and its other schools.  A number of incidents were reported to school administration and staff members.  The School District failed to take remedial measures to prevent further discrimination of Plaintiffs and other African-American students allowing the conduct to continue and permeate throughout the School District.

273. Racial hostility permeated (and continues to permeate) the Middlesex Borough Board of Education of such severity and pervasiveness as to significantly alter the conditions of Plaintiffs' educational environment resulting in mental and emotional distress and threats of physical attacks and thereby denying Plaintiffs equal access to the Middlesex High School's and

Middlesex Borough Board of Education's resources and opportunities.

274. Defendant Middlesex Borough Board of Education, despite actual knowledge and adequate opportunity to learn of this misconduct, failed to act to remedy the harassment, discrimination, and disparate treatment of Plaintiffs D.I. and K.M.

275. As a direct result of the actions and conduct of Defendant Middlesex Borough Board of Education, Plaintiffs suffered and continues to suffer emotional distress, loss of educational opportunities, and other damages.

276. As a result of Defendant Middlesex Borough Board of Education's violation, Plaintiffs are also entitled to attorney's fees and costs.

<u>**COUNT III**</u>

New Jersey Law Against Discrimination,
N.J. Stat. Ann § 10.5-1 *et seq*.

277. By reference hereto, Plaintiffs incorporate the preceding paragraphs by reference as if fully stated herein.

278. The New Jersey Law Against Discrimination provides in relevant part, "All persons shall have the opportunity to obtain . . . all the accommodations, advantages, facilities, and privileges of any place of public accommodation (a defined term that includes schools) . . . without discrimination because of race . . . This opportunity is recognized as and declared to be a civil right." <u>N.J.S.A.</u> § 10:5-5(I).

279. As such, Defendant Middlesex Borough Board of Education had a duty to provide Plaintiffs with an educational atmosphere free of race discrimination.

280. Defendant Middlesex Borough Board of Education failed to take adequate steps to provide Plaintiffs with an educational atmosphere free of race discrimination.

281. As a result of Defendant Middlesex Borough Board of Education's conduct, customs, policies, and practices, Plaintiffs were unjustly and discriminatorily deprived of equal education opportunities and benefits.

282. As a direct result of the actions and conduct of Defendant Middlesex Borough Board of Education, Plaintiffs suffered and continues to suffer emotional distress, loss of educational opportunities, and other damages.

283. As a result of Defendant Middlesex Borough Board of Education's violations, Plaintiffs are also entitled to attorney's fees and costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court take jurisdiction and grant them the following relief:

284. For an Order adjudging the practices of Defendant Middlesex Borough Board of Education complained of herein to be in violation of the rights guaranteed to Plaintiffs under Federal and New Jersey State law;

285. Issue a permanent injunction that directs Defendant School District to comply with Federal and State law;

286. Leave to add additional plaintiffs or claims by motion or any other method approved by the Court;

287. For an award to Plaintiffs D.I. and K.M. against Defendant School District of all relief available under 42 U.S.C. § 1983, 42 U.S.C. § 2000d, and the New Jersey Law Against Discrimination, N.J. Stat. Ann § 10.5-1 *et seq.*, in amounts to be determined at trial, with interest on such amounts;

288. For an award of Plaintiffs' compensatory damages in an amount to be determined at trial for mental anguish, severe emotional distress, serious mental injury, loss of educational opportunities, and other injuries proximately caused by the wrongful conduct of Defendant School District;

289. For an award of punitive damages in an amount to be determined at trial;

290. For an award to Plaintiffs D.I. and K.M. of their attorney's fees, disbursements, and the costs of this action, and;

291. For such other and further relief as the Court deems just and equitable.

Dated: September 18, 2022          Respectfully submitted,

/s/ *Norman R. Jimerson, Jr.*
_____
          Norman R. Jimerson, Jr.
          NJ Bar I.D. # 0300061999
          The Jimerson Practice, LLC

101 Central Avenue
Clifton, New Jersey  07011
Telephone(973) 772-4100
Facsimile (973)772-0979
nrj@thejimersonpracticellc.com
Attorney-for-Plaintiffs